| | |
|---|---|
| DISTRICT COURT, LARIMER COUNTY, STATE OF COLORADO<br><br>Larimer County District Court<br>Larimer County Courthouse<br>201 LaPorte Avenue, Suite 100<br>Fort Collins, Colorado 80521 | DATE FILED: May 23, 2017 4:52 PM<br>FILING ID: C2F1686B1FDF1<br>CASE NUMBER: 2017CV30448 |
| Plaintiff:<br>**MATTHEW GRANT**<br><br>v.<br><br>Defendants:<br>**ILLINOIS NATIONAL INSURANCE COMPANY; CLAIMS MANAGEMENT, INC.; JOHN/JANE DOES and DOE ENTITIES** | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff:*<br>Bob L. Ring, Esq., Atty. Reg. No.: 26858<br>Matthew Haltzman, Esq., Atty. Reg. No.: 47913<br>2550 Stover Street, Building C<br>Fort Collins, CO 80525<br>Phone Number: (970) 221-0664<br>FAX Number: (970) 493-2072 | Case Number:<br>Division:<br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Matthew Grant, by and through counsel, RING & ASSOCIATES, P.C., alleges and avers as follows in support of this Complaint and Jury Demand against Defendants:

## JURISDICTION AND VENUE

1.  Plaintiff, Matthew Grant, is now, and at all times relevant hereto, a resident of the state of Colorado, residing at 400 South Overland Trail, Lot 6, Fort Collins, Colorado 80521.

2.  Defendant Illinois National Insurance Company (hereinafter "INIC") is a New York insurance company doing business in the state of Colorado. The business address for INIC is 175 Water Street, 18th Floor, New York, NY 10038. The registered agent for INIC is the Colorado Division of Insurance, 1560 Broadway, Suite 850, Denver, CO 80202.

**EXHIBIT A**

3. Defendant Claims Management, Inc., involved as INIC's third party administrator, (hereinafter "CMI"), is an Arkansas insurance company/third party administrator doing business in the state of Colorado. CMI's principal address is P.O. Box 14731, Lexington, KY 40512. The registered agent for CMI is the Corporation Company, 7700 East Arapahoe Road, Suite 220, Centennial, CO 80112.

4. There are persons and/or entities who or which do or may have liability upon one or more of the claims asserted or to be asserted in this action and who or which are identified in this Complaint only as John and/or Jane Does and/or Doe Entities. Either their identities are not yet known to Plaintiff or the facts concerning their liability and/or their amenability or capacity to be joined as Defendants in this case are not yet sufficiently known to Plaintiff to allow their joinder in this pleading. As additional facts concerning such matters are learned, Plaintiff will move promptly to amend this Complaint accordingly.

5. Pursuant to Colo. R. Civ. P. 98(c), this court has subject matter jurisdiction over all claims asserted herein and personal jurisdiction over all parties. Venue is properly laid in the District Court for Larimer County.

## <u>GENERAL ALLEGATIONS</u>

6. The terms "Defendant" or "Defendants" as used herein include employees, agents, servants, staff, and any other persons under the supervision or control of a defendant or defendants during times relevant herein.

7. Matthew Grant sustained a compensable back and left hip injury on July 22, 2012. At the time, he was employed by Walmart Distribution Center.

8. On the day of Matthew Grant's work-related incident, Walmart Distribution Center's workers' compensation insurance carrier was Illinois National Insurance Company. On behalf of Walmart Distribution Center, Illinois National Insurance Company was liable to provide workers' compensation benefits to Matthew Grant as required by the Colorado Workers' Compensation Act.

9. Illinois National Insurance Company hired or retained Claims Management, Inc. to act as a third party to administer their workers' compensation claims. On behalf of Walmart Distribution Center, Illinois National Insurance and Claims Management, Inc. were liable to provide worker's compensation benefits to Matthew Grant as required by the Colorado Workers' Compensation Act.

10. At the time of the incident, the insurance contract known as CMI claim number, C2487960, was in effect between the parties to this action.

11. The contract of Workers' Compensation insurance in force between Walmart Distribution Center and INIC is governed by law that the legislature intends to be interpreted and applied so as to "assure the quick and efficient delivery of disability and medical benefits…at a reasonable cost to employers, without the necessity of any litigation…" §8-40-102(1), C.R.S. The primary purpose of the Workers' Compensation Act is to protect employees who sustain injuries arising out of their employment.

12. At all times relevant hereto, Matthew Grant was an intended beneficiary of the contract of worker's compensation insurance in force between Walmart Distribution Center and INIC.

13. The Workers' Compensation Act creates property rights possessed by an injured worker, specifically, that the Respondent-Insurer is liable for medical treatment which is reasonably necessary to cure and relieve the effects of the industrial injury. §8-42-101(I)(a), C.R.S. Accordingly, harm to a worker's right to obtain medical treatment that is reasonably necessary and related to a work injury is harm to the property of the worker.

14. An authorized surgeon recommended Matthew Grant undergo a left total hip arthroplasty. On Wednesday, May 20, 2015, Matthew Grant underwent a left total hip replacement at Medical Center of the Rockies. Matthew Grant was subsequently discharged from Medical Center of the Rockies on Saturday, May 23, 2015.

15. Upon Matthew Grant's discharge from Medical Center of the Rockies on May 23, 2015, hospital staff attempted to obtain authorization from CMI to transfer Matthew Grant to a rehabilitation facility. CMI did not respond to any of Medical Center of the Rockies' requests for authorization to transfer Matthew Grant to a rehabilitation facility.

16. Upon Matthew Grant's discharge from Medical Center of the Rockies on May 23, 2015, hospital staff attempted to obtain authorization from CMI for home health care. CMI did not respond to any of Medical Center of the Rockies' requests for authorization of home health care.

17. Due to CMI's refusal to respond to Medical Center of the Rockies' requests for authorization of home health care post a left total hip replacement, Matthew Grant returned to his authorized treating physician, Jeffrey Wunder, M.D. On Tuesday, May 26, 2015. On that day, Dr. Wunder faxed CMI a request/prescription for home health care.

18. By Wednesday, May 27, 2015, Matthew Grant was still without home health care post hip surgery despite Medical Center of the Rockies' and Dr. Wunder's requests for authorization. On May 27, 2015, CMI's counsel received Dr. Wunder's request/prescription for authorization of home health care and continued to delay authorization by stating that she needed some explanation of the medical necessity for home health care.

19. Despite Defendants' unreasonable delay and callous indifference to the suffering and harm were causing to Matthew Grant by refusing to provide home health care after his total left hip replacement, Dr. Wunder complied with their redundant request by faxing a letter to CMI on May 27, 2015, delineating the obvious reasons home health care assistance was reasonable and medically necessary for Matthew Grant. Dr. Wunder's reasons included:  a)  Matthew Grant's inability to bear any weight on his hip as a result of the surgeon having difficulty fitting him with the appropriate total hip replacement hardware; b)  Matthew Grant lived by himself ever since his wife passed away and therefore had no one to assist him in his activities of daily living; and, c)  he was on postoperative pain medication which caused an unsteady gait that increased his risk of falling and causing further damage to his hip. In this letter, Dr. Wunder informed CMI that Matthew Grant had been functioning without home health care since May 24, 2015, that he was not doing well and that authorization of home health care required their immediate attention.

20. Accordingly, Matthew Grant's authorized treating physician took steps to obtain prior authorization of the necessary home health care, and (in fact) by law this authorization was established and irrefutable.

21. Defendants refused to authorize the requested home health care, without any basis, and deliberately interfered with the course of care being provided to Matthew Grant by his authorized physicians. Thereafter, Defendants unilaterally barred Matthew Grant from obtaining the medical benefits to which he was entitled to by the Workers' Compensation Act.

22. The Defendants have continued to unreasonably delay and refuse to authorize reasonable and necessary medical care. The Defendants forced the matter of Matthew Grant's need for other medical treatment to a hearing and an Administrative Law Judge issued a Findings of Fact, Conclusions of Law and Order on October 7, 2016, requiring Defendants to provide the additional medical care requested by Matthew Grant's authorized providers for his compensable work injury. The ALJ further found that the medical care was authorized because the Defendants had failed to comply with the Workers' Compensation Rules of Procedure which govern the process of authorizing and denying medical care under the Colorado Workers' Compensation Act.

23. Defendants' first bad faith actions became known to Matthew Grant on or about May 23, 2015, but have continued up through the present time.

24. At no time did Defendants provide Matthew Grant or his authorized treating physicians with any explanation of specific medical reasons for the denial of the authorization for the home health care or the name and professional credentials of any person performing a medical review concerning denial of authorization for the home health care.

25. Defendants did not allow authorized physicians to handle the medical treatment decisions in this claim, as required by the Workers' Compensation Act, and (in fact) deliberately interfered with Matthew Grant's service contracts with those professionals.

26. That the Defendants have created controversies resulting in a need for litigation is contrary to the legislative intent underlying Colorado's Workers' Compensation Act, and is contrary to what a reasonable, prudent insurer or third party administrator would do under the same or similar circumstances.

27. The Defendants stated at hearing that they will neither deny nor authorize, verbally or in writing and as part of a company policy, requested medical care from an authorized treating physician as they are required to under the Workers' Compensation Rules of Procedure and the Colorado Workers' Compensation Act.

28. Defendants' failure to authorize or deny requested medical treatment in this claim, as required by the Workers' Compensation Act, and (in fact) deliberately interfered and unreasonably delayed Matthew Grant's medical care.

29. Defendants' failure to authorize or deny requested medical treatment in this claim prohibited and delayed his authorized physicians to provide reasonable and necessary medical treatment in this claim, as required by the Workers' Compensation Act, and denied Matthew Grant reasonable and timely access to the medical benefits to which he was entitled by the Workers' Compensation Act.

30. From the date of his work injury on July 22, 2012, Matthew Grant's medical condition has warranted immediate medical treatment and delays in authorization of treatment were harmful to him.

31. Defendants purposefully aggravated Matthew Grant's suffering and injury, alleging without any basis that requested medical care could simply be ignored at their discretion.

32. Defendants' bad acts subjected Matthew Grant to needless pain, emotional distress and mental suffering, the loss of enjoyment of life, and economic loss.

33. Defendants unreasonably delayed and withheld medical care from Matthew Grant (by means of procedural ploys and "company policy").

34. Regarding Matthew Grant, Defendants unreasonably failed to comply with required procedures governing Workers' Compensation claims.

35. Defendants knew that they were liable on Matthew Grant's claim for workers' compensation benefits when they refused to timely authorize reasonably necessary medical treatment for his work injuries.

36. CMI, was the third party administrator for INIC during times relevant to this action. As third party administrator, CMI was an agent of INIC in the performance of all of INIC's duties, such that the actions and inactions of CMI are the actions and inactions of INIC.

37. CMI, assisted INIC in evading and ignoring medical requests to provide timely workers' compensation benefits to Matthew Grant.

38. Regarding Matthew Grant, Defendants knew or should have known that their actions regarding the prior authorization and interference with the reasonable, necessary, and related medical care that his authorized physicians attempted to provide him, violated the law governing workers' compensation claims.

39. Defendants acted with callous indifference to the suffering and harm caused to Matthew Grant.

40. Since May 23, 2015, Defendants' actionable bad acts included, but are not limited to the use of internal company policy to unreasonably delay Workers' Compensation benefits (specifically medical care) from Matthew Grant.

### FIRST CLAIM FOR RELIEF
*(Breach of Insurance Contract – All Defendants)*

41. The allegations of paragraphs 1 through 40 of this Complaint are incorporated herein by reference.

42. As stated herein, as a direct and proximate result of the July 22, 2012, work-related incident, Matthew Grant sustained severe injuries which required immediate medical treatment and was entitled to workers' compensation benefits pursuant to the Colorado Workers' Compensation Act.

43. Pursuant to Walmart Distribution Center's workers' compensation insurance policy and the Colorado Workers' Compensation Act, INIC and CMI were responsible for and liable to pay for all reasonable and necessary medical care and treatment and other workers' compensation benefits arising from Matthew Grant's July 22, 2012, work-related incident.

44. INIC and CMI failed to pay and/or delayed payment of Matthew Grant's reasonably necessary medical treatment and other workers' compensation benefits to which he was entitled to pursuant to the Colorado Workers' Compensation Act.

### SECOND CLAIM FOR RELIEF
*(Breach of Fiduciary Duty – All Defendants)*

45. The allegations of paragraphs 1 through 44 of this Complaint are incorporated herein by reference.

46. The Defendants were acting as fiduciaries of Matthew Grant with respect to providing workers' compensation benefits owed to Matthew Grant as required by the Workers' Compensation Act.

47. Defendants breached fiduciary duties to Matthew Grant.

48. Matthew Grant suffered emotional distress and financial loss.

49. The Defendants' breach of fiduciary duties was a cause of Matthew Grant's damages, and losses heretofore alleged.

### THIRD CLAIM FOR RELIEF
*(Conversion – All Defendants)*

50. The allegations of paragraphs 1 through 49 of this Complaint are incorporated herein by reference.

51. Upon information and belief, the Defendant, planned (by words or conduct) to delay Matthew Grant's medical care and treatment and other workers' compensation benefits in violation of the Colorado Workers' Compensation Act, despite the prejudice and harm that would occur to Matthew Grant by refusing to follow Colorado law.

52. Defendants have conspired to accomplish an unlawful goal, or have conspired to accomplish a goal through unlawful means.

53. Defendants are liable for conspiring to deny and delay payment of workers' compensation benefits to which Matthew Grant was entitled under the Colorado Workers' Compensation Act as a result of his July 22, 2012, work-related incident.

54. Defendants' actions were undertaken with an intent to intentionally delay and deprive Matthew Grant of the use and enjoyment of his property, Workers' Compensation benefits.

55. As a direct and proximate result of the actions of Defendants complained of herein, Matthew Grant suffered physical pain as a result of denials of reasonable and necessary medical treatment, was subjected to severe emotional distress and mental suffering, the loss of enjoyment of life, and economic loss.

### FOURTH CLAIM FOR RELIEF
*(Bad Faith – All Defendants)*

56. The allegations of paragraphs 1 through 55 of this Complaint are incorporated herein by reference.

57. INIC and CMI owed a duty of good faith and fair dealing to Matthew Grant in investigating, processing, and paying the workers' compensation claim arising from the July 22, 2012, work-related incident.

58. INIC and CMI breached their duty of good faith and fair dealing to Matthew Grant by acting unreasonably with knowledge of or reckless disregard for the fact that no reasonable basis existed in failing to fulfill their responsibilities under Colorado's Workers' Compensation Act and in denying and delaying payment of Matthew Grant's reasonable and necessary medical care and treatment and other workers' compensation benefits.

59. The unreasonable failure of INIC and CMI to fulfill their responsibilities under Colorado's Workers' Compensation Act and in denying and delaying payment of Matthew Grant's reasonable and necessary medical care and treatment and other Workers' Compensation benefits caused Matthew Grant to be liable for some or all of these expenses, prolonged his physical pain, caused emotional distress and mental suffering, the loss of enjoyment of life, and economic loss.

## FIFTH CLAIM FOR RELIEF
*(Intentional Interference with Contract – All Defendants)*

60. The allegations of paragraphs 1 through 59 of this Complaint are incorporated herein by reference.

61. Matthew Grant was a beneficiary of the workers' compensation insurance contract obtained by Walmart Distribution Center from INIC and CMI.

62. The workers' compensation insurance contract obtained by Walmart Distribution Center required INIC and CMI to take timely positions on liability, to publish admissions consistent with liability, and to pay all reasonable and necessary medical care and treatment and other workers' compensation benefits arising from Matthew Grant's July 22, 2012, work-related incident.

63. Defendants knew of the workers' compensation insurance contract and the obligations and responsibilities of INIC and CMI arising under the insurance contract and the Colorado Workers' Compensation Act.

64. The conduct of Defendants caused Matthew Grant to be deprived of the expected benefits of the workers' compensation insurance contract and benefits arising under the Colorado Workers' Compensation Act, prolonged Matthew Grant's physical pain, caused severe emotional distress and mental suffering, the loss of enjoyment of life, and economic loss.

**SIXTH CLAIM FOR RELIEF**

*(Colorado Consumer Protect Act, § 6-1-101 et seq., C.R.S. – All Defendants)*

65. The allegations of paragraphs 1 through 64 of this Complaint are incorporated herein by reference.

66. The Defendants are all involved with the Workers' Compensation insurance industry to such an extent that they are not excluded from the provisions of the Colorado Consumer Protection Act (hereinafter "CCPA").

67. The workers' compensation benefits owed to Matthew Grant as required by the Colorado Workers' Compensation Act are the sale of goods, services, or property under the CCPA.

68. Defendants engaged in deceptive trade practices that included bad faith conduct and unfair claims handling practices.

69. Defendants' deceptive trade practices included (but were not limited to) knowingly passing off goods, services, or property as those of another; knowingly making a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; knowingly making a false representation as to the characteristics, uses, benefits, alterations, or quantities of goods, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of persons therewith; representing that goods, services, or property were of a particular standard, quality, or grade, knowing (or should have known) that they were of another; having advertised goods, services, or property with intent not to sell them as advertised; having advertised goods or services with intent not to supply reasonably expectable public demand; and by having employed "bait and switch" advertising.

70. In engaging in the deceptive trade practices listed in the CCPA, the Defendants' conduct was bad faith conduct (i.e., fraudulent, willful, knowing, or intentional conduct) that caused injury to Matthew Grant.

71. The Defendants' engaging in the deceptive trade practices listed in the CCPA was a cause of Matthew Grant's injuries, damages, and losses heretofore alleged.

72. The Defendants are liable to Matthew Grant for three times the amount of actual damages he has sustained, because the Defendants engaged in bad faith conduct.

**SEVENTH CLAIM FOR RELIEF**

*(Respondeat Superior/Imputed Negligence against INIC and CMI)*

73. The allegations of paragraphs 1 through 72 of this Complaint are incorporated herein by reference.

74. Upon information and belief, at all times pertinent hereto, INIC and CMI employed adjusters, representatives, agents, servants and employees to administer their workers' compensation claims on behalf of Walmart Distribution Center.

75. INIC's and CMI's adjusters, representatives, agents, servants and employees had at all times the means to control the timely acknowledgement and authorization Matthew Grant's reasonable and necessary medical treatment.

76. At all times, said adjusters, representatives, agents, servants and employees were acting within the course and scope of their employment with INIC and CMI.

77. At all pertinent times, Defendants INIC and CMI had control of their adjusters, representatives, agents, servants and employees.

78. Plaintiff had an expectation that INIC's and CMI's adjusters, representatives, agents, servants and employees would fulfill their duty of good faith and fair dealing to timely acknowledge and authorize his reasonable and necessary medical treatment.

79. Plaintiff's right to reasonable and necessary medical treatment, as required by the Workers' Compensation Act, was intentionally violated by INIC's and CMI's adjusters, representatives, agents, servants and employees.

80. Defendants' adjusters, representatives, agents, servants and employees breached their duty of good faith and fair dealing to Matthew Grant by acting unreasonably with knowledge of or reckless disregard for the fact that no reasonable basis existed in failing to fulfill their responsibilities under the Colorado's Workers' Compensation Act in denying and delaying payment of Matthew Grant's reasonable and necessary medical care and other workers' compensation benefits.

81. The actions of Defendants' adjusters, representatives, agents, servants and employees were ratified and approved by Defendants INIC and CMI, which makes INIC's and CMI's adjusters, representatives, agents, servants and employees vicariously responsible for the bad faith conduct and unfair claims handling practices.

82. Defendants INIC and CMI carry out their services through their employees.

83. Upon information and belief, CMI is the third party administrator for INIC. INIC is vicariously liable for CMI and the actions of its adjusters, representatives, agents, servants and employees.

84. The conduct of Defendants' adjusters, representatives, agents, servants and employees caused Matthew Grant to be deprived of the expected benefits of the workers' compensation insurance contract and benefits arising under the Colorado Workers'

Compensation Act, prolonged Matthew Grant's physical pain, caused severe emotional distress and mental suffering, the loss of enjoyment of life, and economic loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Grant respectfully requests that this Court enter judgment in favor of the Plaintiff and against Defendants and grant the following relief:

A.  Compensation for the past economic losses which Plaintiff has had, including earnings lost and expenses sustained or incurred;

B.  Compensation for past and future noneconomic losses, including untreated pain, emotional distress, permanent impairment and mental suffering;

C.  Statutory treble damages;

D.  Interest as provided by law;

E.  Plaintiff's costs; and

F.  Such further relief as the Court deems proper.

## JURY DEMAND

PLAINTIFF REQUESTS THE ISSUES HEREIN BE TRIED TO A JURY OF SIX PERSONS.

Respectfully submitted this 23rd day of May, 2017.

RING & ASSOCIATES, P.C.
*Original is on file at Ring & Associates, P.C.*
*pursuant to C.R.C.P. 121 § 1-26.*

By:   */s/ Bob L. Ring*
Bob L. Ring, Esq., Reg. No. 26858
2550 Stover Street, Building C
Fort Collins, CO 80525
Telephone:   (970) 221-0664
Facsimile:   (970) 493-2072

Plaintiff's Address
400 South Overland Trail, Lot 6
Fort Collins, CO 80521